UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                                  Chapter 11(Subchapter V)

DMMJ REALTY CORP.,[1]                                    Case No.: 25-22157 (SHL)

                          Debtors.                      (Jointly Administered)
--------------------------------------------------------X


**<span style="color:blue">FIRST AMENDED</span> SMALL BUSINESS PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


**DAVIDOFF HUTCHER & CITRON LLP**
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(646) 428-3124
Robert L. Rattet, Esq.

*Attorneys for the Debtors and Debtors-in Possession*

Dated: ~~May 27~~July 3, 2025

---

[1]    Jointly administered with DMMJ Realty Corp. (Tax ID: **-***3226) and Mexican-American El Tio Ltd. (Tax ID: **-***5873). The address of the Debtors is 143 Westchester Avenue, Port Chester, NY 10573.

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This ~~plan of reorganization (this "~~"first amended Plan of Reorganization (this " Amended Plan") under subchapter V of Chapter 11 of title 11, United States Code, is submitted by the above-captioned Debtors (as defined below), pursuant to sections 1189 and 1190 of the Bankruptcy Code (as defined below).[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in Article 1.A of this Amended Plan. The Debtors are the proponents of this Amended Plan (the "Plan Proponents") within the meaning of section 1129 of the Bankruptcy Code.

The Debtors propose to fund this Amended Plan and pay creditors from the ~~Debtors cash on hand,~~ net proceeds (after legal fees and costs) ~~recovered from the sale of the property located at 143 Westchester Avenue, Port Chester, New York 10573 (the "Property"), or, in the alternative, from the potential~~realized from the proceeds obtained from the DIP Financing (as defined herein).

## ARTICLE 1
## DEFINITIONS AND INTERPRETATIONS

### A.    Defined Terms.

For the purposes of this Amended Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

**1.**    **"Administrative Claims"** shall mean all costs and expenses of administration of the Chapter 11 Cases Allowed under sections 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under section 507(a)(2) of the Bankruptcy Code.

**2.**    **"Allowed"** means, with respect to any Claim, except as otherwise provided herein: (i) a Claim that is evidenced by a Proof of Claim filed by the applicable Bar Date established in the Chapter 11 Case (or for which Claim under the Amended Plan, the Bankruptcy Code or a Final Order of the Bankruptcy Court, a Proof of Claim explicitly is not or shall not be required to be Filed); (ii) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed that asserts a Claim different in amount or priority from that listed in the Schedule; or (iii) a Claim Allowed pursuant to the Amended Plan or a Final Order; *provided* that with respect to a Claim described in clauses (i) and (ii) of this definition, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed by the Claim Objection Deadline; *provided*, *further*, that notwithstanding the foregoing, (x) unless expressly waived by the Amended Plan, the Allowed amount of Claims shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including section 502 or 503 of the Bankruptcy Code, the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise

---

[2]    ~~Persuant~~Pursuant to section 1881(b) of the Bankruptcy Code, the Debtors are not required to file a disclosure statement, as section 1125 of the Bankruptcy Code does not apply to a subchapter V case, unless otherwise ordered by the Court.

Unimpaired pursuant to the Amended Plan. "Allow," "Allowing," and "Allowance," shall have correlative meanings.

**3.** **"Amended Plan"** shall mean this Chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof

**4.** 3. **"Bankruptcy Code"** shall mean title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

**5.** 4. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of New York, White Plains Division, or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 156, the District Court.

**6.** 5. **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Cases.

**7.** 6. **"Bar Date"** means, collectively the General Bar Date and the Governmental Bar Date.

**8.** 7. **"Broker"** shall mean ~~Northgate Real Estate Group, or~~ any duly licensed professional real estate ~~or mortgage broker,~~ engaged by the Debtors.

**9.** 8. **"Cash"** shall mean legal tender of the United States of America or cash equivalents.

**10.** 9. **"Cause of Action"** shall mean any and all Claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors, and/or the Estate created pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases), including, without limitation, any claims, causes of action, objections, rights, remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, whether held in a personal or representative capacity, that are or may be pending as of the date hereof or instituted hereafter against any entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date hereof.

**11.**    ~~10.~~ **"Chapter 11 Cases"** means the cases filed by the Debtors under Chapter 11 of the Bankruptcy Code, which are jointly administered under Case No. 25-22157 (SHL).

**12.**    ~~11.~~ **"Claim"** as defined in section 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtors, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtors arising out of the rejection of executory contracts, any claim against the Debtors arising from the recovery of property under sections 550 and 553 of the Bankruptcy Code and a claim against the Debtors that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under section 507(a) of the Bankruptcy Code.

**13.**    ~~12.~~ **"Classes of Claims"** includes all classes set forth by Article 4 herein.

**14.**    ~~13.~~ **"Closing"** shall mean the closing on the refinance or sale of the Property~~, whether such sale is effectuated through a Sale Contract or auction~~.

**15.**    ~~14.~~ **"Confirmation"** means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

**16.**    ~~15.~~ **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

**17.**    ~~16.~~ **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Amended Plan pursuant to section 1129 of the Bankruptcy Code.

**18.**    ~~17.~~ **"Creditor"** means any Person who: (a) holds a Claim against the Debtors that arose prior to the Petition Date; or (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b).

**19.**    ~~18.~~ **"Debtors"** means DMMJ Realty Corp., and Mexican-American El Tio Ltd.

**20.**    ~~19.~~ **"DHC"** shall mean Davidoff Hutcher & Citron LLP, Debtors' counsel for these Chapter 11 Cases.

**21.**    ~~20.~~ **"DIP Financing"** means the debtor-in-possession financing agreement ~~to be filed in the near term~~obtained by the Debtors.

**22.**    ~~21.~~ **"DIP Lender"** means the lender under the DIP Financing subject to Court approval.

**23.**    **"DIP Motion"** means the Motion to approve the DIP Financing, filed on July 3, 2025 [ECF Docket No. ].

**24.**    ~~22.~~ **"DIP Order"** means the order to be entered by the Bankruptcy Court approving the DIP Financing.

**25.**    ~~23.~~ **"Disallowed"** means with respect to a Claim, (a) any Claim, which Claim is disputed under the Amended Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be Filed with the Bankruptcy Court but as to which a Proof of Claim was not timely or properly Filed by the applicable claims bar date; (c) any Claim that is listed in the Schedules as unliquidated, contingent, or disputed and as to which no request for payment or Proof of Claim has been Filed by the applicable claims bar date; (d) any Claim that is otherwise disputed by the Debtors or Reorganized Debtors, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and disputed as to the balance of such claim. "Disallow" and "Disallowance" shall have correlative meanings.

**26.**    ~~24.~~ **"Disbursing Agent"** means ~~the Reorganized Debtor or the Subchapter V trustee~~DHC, who shall act in such capacity in order to effectuate the payment of distributions under the Amended Plan. The Disbursing Agent will file a report of distributions of all plan payments made until the case is closed. The reports shall include information on when plan payments were made and to whom and shall be filed with the Court.

**27.**    ~~25.~~ **"Disputed"** shall mean a Claim or Interest, or any portion of a Claim or Interest, that is not Allowed.

**28.**    **"Disputed Alan Jacob's Secured Claim"** means the disputed secured claim held by Mary Jacobs, on behalf of the estate of Alan Jacobs.

**29.**    **"Disputed Patty Rende Secured Claim"** means the disputed secured claim held by Patty Rende, on behalf of the estate of Mary Louise Rende.

**30.**    ~~26.~~ **"Distribution Fund"** shall mean the net proceeds of sale or refinance of the Property, respectively.

**31.**    ~~27.~~ **"DOL Dispute"** shall mean the pending New York Department of Labor investigation against Debtor El Tio for alleged violations of New York's Labor Law by former employees, with an investigation reference number LS 05 2023003108.

**32.**    ~~28.~~ **"Effective Date"** The effective date of this Amended Plan is no earlier than (a) the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated

**33.**    ~~29.~~ **"Estate"** means the estate of the Debtors created under section 541 of the Bankruptcy Code.

**34.**    **"Exculpated Claim"** means any claim related to any act or omission in connection with, relating to or arising out of the Debtors' restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Amended Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Amended Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Amended Plan, including the distribution of property under the Amended Plan or any other related agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or fraud.

**35.**    ~~30.~~ **"File," "Filed," or "Filing"** means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court.

**36.**    ~~31.~~ **"Final Order"** means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for a new trial reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 69 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

**37.**    ~~32.~~ **"General Bar Date"** means July ~~15~~25, 2025.

**38.**    ~~33.~~ **"General Unsecured Claim"** shall have the meaning set forth by Article 6.1 herein.

**39.**    ~~34.~~ **"Government Bar Date"** means ~~August 27~~September 3, 2025.

**40.**    ~~35.~~ **"Impaired"** shall mean a Claim or class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**41.**    ~~36.~~ **"Interest"** shall mean the rights of the members of the Debtor.

~~37. "Alan Jacob's Secured Claim" means the allowed secured claim held by Mary Jacobs, on behalf of the estate of Alan Jacobs.~~

**42.**    ~~38.~~ **"Property"** shall mean the property located at 143 Westchester Avenue, Port Chester, New York 10573, that totals .07 acres and comprises of three (3) stories; floor one (1) a now defunct restaurant, while floor two (2) and three (3) consists of thirteen (13) residential apartment units that are currently rented out.

**43.**    ~~39.~~ **"Petition Date"** shall mean February 27, 2025, the date on which the Debtors commenced the Chapter 11 Cases.

~~40. "Plan" shall mean this Chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.~~

**44.**    ~~41.~~ **"Priority Tax Claim"** means any Secured Claim or Unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**45.**    ~~42.~~ **"Pro Rata Share"** means the proportion that an Allowed Claim or interest in a particular Class bear to the aggregate amount of Allowed Claims or interest in that Class, or the proportion that Allowed Claims or interest in a particular Class bear to the aggregate amount of Allowed Claims or interest and Disputed Claims or interest in a particular Class and other Classes entitled to share in the same recovery as such Class under the Amended Plan.

**46.**    ~~43.~~ **"Professional"** shall mean those persons: (a) retained by the Debtors pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to sections 503(b)(2), (4) or 506(c) of the Bankruptcy Code.

**47.**    ~~44.~~ **"Professional Fee Claims"** means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date and before or on the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

**48.**    ~~45.~~ **"Proof of Claim"** shall mean a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

~~46.~~ **"Real Estate Tax Claim"** shall mean a Claim, other than an Administrative Claim, that is entitled to priority under section 507 of the Bankruptcy Code.
**"Rejection Damage Claim"** is a Claim for damages arising from the rejection of an executory contract or unexpired lease; a proof of a claim arising from such rejection must be filed no later than thirty (30) days after the date of the order confirming this Amended Plan.

~~47. "Patty Rende Secured Claim" means the allowed secured claim held by Patty Rende, on behalf of the estate of Mary Louise Rende.~~

**49.** ~~48.~~ **"Released Parties"** shall have the meaning set forth by Article 12.1 herein.

**50.** ~~49.~~ "**Reorganized Debtor**" means the Debtors, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

~~50. "RJM" shall mean RJM CPA PLLC, the Debtors' accountants for these Chapter 11 Cases.~~

**51.** "**Sale**" shall mean the sale of the Property, if applicable, pursuant to the terms of the Bid Procedures and this Amended Plan, respectively.

~~52. "Sale Contract" shall mean a written agreement entered between the Debtors and a third party. The Sale Contract shall provide for a deposit that is no less than five percent (5%) of the purchase price, to be held by the Disbursing Agent. The deposit shall be made in Cash or official bank, certified or cashier's check (collectively, "Acceptable Funds") and shall be delivered to the Disbursing Agent upon execution of the Sale Contract.~~

**52.** ~~53.~~ "**Schedules**" shall mean the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors as required by section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and all amendments thereto [ECF Docket No.20]

**53.** ~~54.~~ "**Secured Claim**" shall mean a Claim secured by a valid, perfected, and enforceable lien in the assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or acknowledged by the Debtors in writing or provided for in this Amended Plan.

**54.** ~~55.~~ "**Subchapter V Trustee**" shall mean Jolene Wee.

**55.** ~~56.~~ "**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**56.** ~~57.~~ "**Unsecured Claim**" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim, or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Cases.

**B.**    **Binding Effect**

The rights and obligations of any entity named or referred to in this Amended Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**C.**    **Captions**

The headings contained in this Amended Plan are for convenience of reference only and do not affect the meaning or interpretation of this Amended Plan.

**D.    Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Amended Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

**E.    Controlling Document.**

In the event of an inconsistency between the Amended Plan and any other instrument or document created or executed pursuant to the Amended Plan, the Amended Plan shall control. The provisions of the Amended Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* , that, if there is determined to be any inconsistency between any Amended Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Amended Plan.

**F.    Corporate Governance**

The Debtors will continue to be managed by Patty Barajas and Jay Barajas after the Effective Date. Following the sale of the Property, the Reorganized Debtors will wind-down their operations following substantial consummation of the Amended Plan.

**G.    Exhibits.**

All Exhibits are incorporated into and are a part of the Amended Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court with the Amended Plan Supplement.

**H.    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Amended Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Amended Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**I.    Retention of Jurisdiction**

Following the Effective Date of the Amended Plan, the Bankruptcy Court shall retain such jurisdiction over these Chapter 11 Cases as is legally permissible, including such jurisdiction as is necessary to ensure that the intents and purposes of the Amended Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction, without limitation: (i) to hear and determine all Claims against the Debtors and any objections thereto; (ii) to enforce and interpret the terms and conditions of the Amended Plan; and (iii) to determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Amended Plan.

### J.    Severability

If any provision in this Amended Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Amended Plan.

### K.    Plan Distribution

If the Amended Plan is confirmed under section 1191(a), the Reorganized Debtors shall be the disbursing agent. If the Amended Plan is confirmed under section 1191(b) of the Code, the Subchapter V Trustee shall be the disbursing agent.

### L.    Post Confirmation Duties of the Subchapter V Trustee.

Following the entry of the Confirmation Order and substantial consummation of the Amended Plan, the Subchapter V Trustee services shall terminate as contemplated by section 1183(c) of the Bankruptcy Code. If the Amended Plan is confirmed under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee services shall terminate upon substantial consummation of the Amended Plan. If the Amended Plan is confirmed under section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee services shall terminate when the Chapter 11 Case has been closed, converted or dismissed.

### ARTICLE 2
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

### 2.1    Description and History of the Debtors' Business.

The Debtors are comprised of two separate legal entities; DMMJ Realty Corp. ("DMMJ") and Mexican-American El Tio Ltd ("El Tio"). The Debtors have been owned and operated by Patty Barajas, as the Debtors' president, and her husband, Jay Barajas, in a 50-50 partnership.

DMMJ is a holding company that owns the Property. The Property is directly next door to The Capitol Theatre, a historic theatre located in the village of Port Chester, Westchester County, New York. The Property consists of two (2) commercial spaces on the ground floor, and two

~~foors~~(2) floors above.  DMMJ rents thirteen (13) rooms to tenants at the Property located on the second and third floors of the Property.

El Tio was located in one of the ~~first floor~~first-floor commercial spaces in the Property and operated as a Mexican restaurant.  In the past, the restaurant was consistently open, however, due to the effects of the Covid-19 pandemic, business began to severely decline.  Prior to and for a brief period following the Petition Date, the restaurant was open during certain times, primarily when large events were scheduled at The Capitol Theatre.  The restaurant is now ~~permanently~~ closed.

The restaurant's financial difficulties were compounded by the DOL Dispute, which caused further financial hardship.  Moreover, on February 24, 2025, due to lack of payment, Con Edison cut power to the Property.

### 2.2    Debtors ~~Bankrupty~~Bankruptcy Filing and ~~Post-Petion~~Post-Petition Actions

On account of the above reasons, the Debtors filed for subchapter V of Chapter 11 bankruptcy protection on the Petition Date.  On March 3, 2025, the United States Trustee appointed the Subchapter V Trustee to serve in the Chapter 11 Cases pursuant to section 1183(a) of the Bankruptcy Code, 11 U.S.C. Sections 101-1532, and she has since qualified and served in that capacity.

~~The Debtors have requested that the Bar Date, which is the last date by which creditors may file proofs of claim in the Chapter 11 Cases, be set as July 15, 2025 [ECF Docket No. 34].~~

Agreement with Con Edison: To re-establish power at the Property, following the Petition Date, the Debtors and Con Edison, through their respective counsel, entered into stipulation in which Con Edison agreed to restore power and continue to provide electricity to the Property in exchange for the Debtors' agreement to provide payment of a deposit in the amount of $6,708.00 and that the Debtors would remain current on all future payments. (the "Utility Stipulation") [ECF Docket No. 14]. On May 20, 2025, the Bankruptcy Court entered an order approving the Utility Stipulation. [ECF Docket No. 16].

DIP Financing: The Debtors ~~have been~~engaged in arm's length negotiations with several potential providers of DIP Financing and have filed a motion to approve the DIP Financing with the DIP Lender.  Such DIP Financing is to be secured by the Property, along with, among other things, guarantees of El Tio and the Barajas. ~~Among other things, such~~ Such DIP Financing ~~is to~~will provide sufficient funding to prosecute these Chapter 11 Cases, to make certain payments regarding the Barajas' home ~~in Rye, New York~~ (which will also serve as collateral for the DIP Financing~~). The Debtors expect to file a motion seeking approval of he DIP Financing in the near term~~, and to make distributions under this Amended Plan.  The Amended Plan provides for payment of one hundred percent of the Debtors' Allowed creditors.

~~In addition, the Debtors filed a motion in the near term to retain Northgate as their real estate broker with respect to a sale of the Property. The Debtors believe that a sale of the Property will result in sufficient Cash to pay the Claims one hundred percent of all of their Allowed creditors.~~

Sale of the Property. The Debtors intend to sell the Property subject to the Amended Plan and the provisions of the Bankruptcy Code. The Debtors have also been in ongoing discussions with potential purchasers of the Property. Such sale, however, will take time to be finalized and close. In the meantime, the Debtors intend to pursue confirmation of this Amended Plan and use the funds from the DIP Financing to make distributions under this Amended Plan. The Debtors believe that the sale of the Property will result in more than sufficient Cash to repay the DIP Financing.

On June 13, 2025, the Court Ordered that the Bar Date, which is the last date by which creditors may file proofs of claim in the Chapter 11 Cases, be set as July 25, 2025 [ECF Docket No. 37].

### 2.3 Description of the Debtor's Assets and Liabilities

In addition to the Debtors' assets listed on the Schedules, the Debtors and their professionals, on behalf of their estates, have reviewed and analyzed transfers of the Debtors assets and major transactions in the six (6) years prior to the filing of this Chapter 11 Cases to identify potential Avoidance Actions under sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code section. The Debtors do not believe there are any actionable transfers.

### 2.4 Liquidation Analysis

To confirm the Amended Plan, the Court must find that all creditors and equity interest holders who do not accept the Amended Plan will receive at least as much under the Amended Plan as such Claim and equity Interest holders would receive in a Chapter 7 liquidation. The liquidation value of the Debtors' unsecured creditors is $0. The liquidation analysis is annexed hereto as **Exhibit A.** The Debtors will note that the Plan proposes to sell the Property, which is the only asset of DMMJ Realty and El Tio is closed and no longer operating with little to no assets. As such, in the sale context, the expense associated with a Chapter 7 case will exceed the liquidation of the Debtors as outlined in this Plan. Since the Amended Plan provides for one-hundred percent (100%) payment to the Allowed creditors, the Allowed creditors are receiving as much and or more than they would have received in a Chapter 7 proceeding, but likely in a faster time period.

### 2.5 Ability to Make **Amended** Plan Payments

The Amended Plan Proponents must also show that the Debtors will have enough Cash to make the required Amended Plan payments and operate their business. According to the Debtors' projections, on account of the sale of the Property or the refinancing proceeds of the DIP Loan, the Debtors believe they will have sufficient funds available to pay their Allowed creditors in the amounts proposed in this Planfull.

### ARTICLE 3:
### SUMMARY OF AMENDED PLAN

This ~~Amended~~ Plan under subchapter V of Chapter 11 of the Bankruptcy Code proposes to pay Allowed creditors ~~from the Debtors through the following sources: (i) Cash on hand; (ii) the net proceeds (after legal fees and costs) recovered from the sale of the Property; or, alternatively,~~ with proceeds obtained from ~~a potnetial~~ DIP Financing secured by the Property.

This Amended Plan provides for:

One (1) class of priority claims;

One (1) class of secured claims;

One (1) class of non-priority unsecured clams; and

One (1) classes of equity security holders.

Class 3 non-priority unsecured creditors holding Allowed Claims will receive~~,~~ a Pro Rata Distribution from the ~~net excess proceeds from the sale of the Property or the~~ proceeds generated from the DIP Financing which will result in a distribution of one hundred percent (100%) of their Allowed Claims. This Amended Plan also provides for the payment of administrative and priority claims in full.

All creditors and equity security holders should refer to Article 3 through Article 6 of this Amended Plan for information regarding the precise treatment of their Claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE 4
## CLASSIFICATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtors, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether allowed or not, shall be bound by the provisions of the Amended Plan and are hereby classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Allowed Priority Real Estate Taxes for the Township of Rye | Unimpaired | No (deemed to accept) |
| Class 2 | ~~Allowed~~Disputed Patty Rende Secured Claim and the Disputed Alan Jacobs Secured Claim | Impaired | Yes |

| | | | |
|---|---|---|---|
| Class 3 | Allowed General Unsecured Claims | ~~Impaired~~Unimpaired | ~~Yes~~No (deemed to accept) |
| Class 4 | Equity Interests | ~~Impaired~~Unimpaired | ~~Yes~~No (deemed to accept) |

**ARTICLE 5**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES**

**5.1    Administrative Expense Claims**

Under section 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not classified into classes.

Each holder of an administrative expense claim allowed under section 503 of the Bankruptcy Code, will be paid in full on the Effective Date of this Amended Plan, in Cash, or upon such other terms as may be agreed upon by the holder of the Allowed Claim and the Debtors. The Debtors anticipate paying the Subchapter V Trustee's approved fees and expenses on the Effective Date (estimated at $15,000).

**5.2    Professional Fee Claims**

Each holder of a Professional Fee Claim will be paid in full from the proceeds generated from either a sale of the Property or the proceeds from DIP Financing.

**5.2    Priority Tax Claims**

Each holder of a Priority Tax Claim will be paid in full, over not more than five (5) years from the Petition Date consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

**5.3    Statutory Fees (N/A)**

**5.4    Prospective Quarterly Fees (N/A)**

## ARTICLE 6
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE AMENDED PLAN

**6.1     Claims and interests shall Be Treated ~~As~~as Follows Under This Amended Plan:**

### Class 1 – Allowed Priority Real Estate Taxes for the Township of Rye

Unimpaired. Class 1 of the Amended Plan is the Allowed Priority Real Estate Taxes of the Township of Rye for amounts owed by DMMJ Realty for pre-petition taxes on the Property in the principal amount of approximately $188,000.00.

The Allowed Class 1 Claim shall be paid through the Amended Plan in connection with the proceeds from ~~either the sale of the Property, or, in the alternative, from~~the DIP Financing, over such period as may be agreed to by the Debtors and the Debtors, but not to exceed five (5) years from the Petition Date, as permitted by section 1129(a)(9) of the Bankruptcy Code. ~~In addition, the Township of Rye will retain liens on the Debtors' Property until payment in full not if sold.~~

### Class 2 – ~~Allowed~~Disputed Patty Rende Secured Claim and the Disputed Alan ~~Jacobs Secured~~                              Jacobs Secured Claim

Impaired. Class 2 of the Amended Plan is the ~~Allowed~~Disputed Patty Rende Secured Claim and the Disputed Alan Jacob's Secured Claim for a sum to be determined.[3] Class 2 is a Disputed Claim, as the Debtors assert that they have paid the entire amount of the mortgage on the Property, and therefore Class 2 no longer retains a Lien on the Property.

Debtors shall ~~reaffirm this debt through the Plan in connection~~pay any Allowed Class 2 Claims with the proceeds ~~from the sale of the Property, or, in the alternative,~~ from the proceeds of DIP Financing, in amounts as may be agreed to or fixed by the Court.

### Class 3 – General Unsecured Claims

~~Impaired~~Unimpaired. Class 4 are the Allowed General Unsecured Claims. Each holder of an Allowed Class 4 General Unsecured Claim shall ~~receive a Pro Rata distribution from the proceeds generated from either a sale by the Township of Rye or the proceeds from DIP Financing. The Debtors believe that a sale or DIP Financing will generate sufficient funds to pay the Allowed Claims of General Unsecured Creditors a one hundred (100%) distribution on their Allowed Claims~~be paid up to one-hundred percent (100%) from the proceeds from the DIP Financing.

### Class 4 - Equity Interests Holder of the Debtor

---

[3]   The Debtors are in settlement discussions with the holders of these Claims.  Upon reaching any agreement, the Debtors will either amend the Amended Plan or submit a separate motion to the Court for authorization to settle these Claims.

~~Impaired~~Unimpaired. Class 4 represents the equity interest of the Debtors, which is comprised of Patty Barajas and Jay Barajas' combined one-hundred percent (100%) ~~owernship~~ownership interests in the Debtors. Upon the Effective Date of the Amended Plan, the Barajas' will retain their combined interests in the Debtors.

## ARTICLE 7
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**7.1    Disputed Claims.**

A *Disputed Claim* is a Claim that has not been Allowed or Disallowed by a final non-appealable order, and as to which either:

1.  (i)  a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or
2.  (ii)  no proof of claim has been filed, and the Debtors has scheduled such claim as disputed, contingent, or unliquidated.

**7.2    Delay of distribution on a disputed claim.**

No distribution will be made on account of a Disputed Claim unless such Claim is Allowed by a final non-appealable order of the Bankruptcy Court or such other applicable court.

**7.3    Settlement of Disputed Claims.**

The Debtors will have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 8
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Assumed executory contracts and unexpired leases**

The Debtors will be conclusively deemed to have ~~rejected~~assumed all executory contracts and unexpired leases not otherwise ~~assumed~~rejected prior to the Effective Date.

Rejection Damage Claim. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section of this Amended Plan must be filed no later than thirty (30) days after the date of the order confirming this Amended Plan.

## ARTICLE 9
## MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN

**9.1**     **Amended Plan Funding.**

This Amended Plan shall be funded with the net proceeds of (a) cash on-hand; and (b) sale of the Property; or, alternatively (c) the refinance of the Property pursuant to athe DIP Financing. All distributions shall be made by the Disbursing Agent in accordance with Articles 3 through Article 6 above, except that to the extent that a Claim becomes an Allowed Claim after the Effective Date, and then, such distribution shall be made within fourteen (14) days after the order allowing such Claim becomes a Final Order.

All allowedAllowed administrative expenses, including: Class one (1) Priority Real Estate Taxes for the Township of Rye, and Class two (2) AllowedDisputed Patty Rende Secured Claim and Disputed Alan Jacobs Secured Claim shall be paid in full by the DebtorDebtors using the proceeds of the sale of the Property, or alternatively, proceeds fromfrom the DIP Financing, free and clear of any and all liens, claims and encumbrances pursuant to section 1123(5)(D) of the Bankruptcy Code.

All Distributions shall be made by the Disbursing Agent in accordance with Article 9 herein, except that to the extent a Claim becomes an Allowed Claim after the Effective Date, then such amount shall be paid fourteen (14) days after the order Allowing such Claim.

**9.2**     **Property Sale and Mortgage Tax Exemption. Exemptions**

The sale of the Property by the Debtors occurring within two (2) years of the Effective Date shall be exempt from the payment of City and State transfer taxes pursuant to section 1146(a) of the Bankruptcy Code. *See 11 U.S.C. §1146(a).* Likewise, the DIP Financing agreement shall also constitute the making or delivery of an instrument of transfer pursuant to or in connection with confirmation of the Amended Plan and shall be exempt from the payment of any mortgage recording taxes to the fullest extent permitted by section 1146(a) of the Bankruptcy Code.

## ARTICLE 10
## DISCHARGE

***The Bankruptcy Court will retain jurisdiction over (a) the terms, provisions, enforcement and implementation of this Amended Plan, (b) all proceedings governing the objection to or allowance of claims, including claims of the Debtors professionals, (c) any contested matters or adversary proceedings commenced in the Chapter 11 Cases, including any post-effective date adversary proceedings commenced in connection with the enforcement of this Amended Plan, (d) to modify this Amended Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Amended Plan or Confirmation Order to the extent authorized by the Code; and (e) entry of a final decree closing the Chapter 11 Cases.***

***If this Amended Plan is confirmed under section 1191(a), on the Confirmation Date of this Amended Plan, the Debtors will be discharged from any debt that arose before confirmation of this Amended Plan, subject to the occurrence of the Effective Date, to the extent specified in section 1141(d) of the Bankruptcy Code; or***

*If this **Amended** Plan is Confirmed under section 1191(b) of the Bankruptcy Code, as soon as practicable after completion of all payments due under this **Amended** Plan, unless the Bankruptcy Court approves a written waiver of discharge executed by the Debtors after the order for relief under these Chapter 11 Cases, the Court shall grant a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under section 503 of the Bankruptcy Code and provided for in this **Amended** Plan, except for any debt:*

> *(i)    on which the last payment is due after the first three (3) years of this **Amended** Plan, or such other time not to exceed five (5) as may be fixed by the Court; or (ii) if applicable, debts of the kind excepted from discharge under section 523(a) of the Bankruptcy Code.*

## ARTICLE 11
## RESERVE FOR DISPUTED CLAIMS

The Debtors shall reserve on account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtors may agree upon. The property so reserved for the holder, to the extent such Disputed Claim is Allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim by Final Order, shall thereafter be distributed to such holder.

## ARTICLE 12
## EXCULPATION; AMENDED PLAN INJUNCTION

**12.01   Exculpation.**

*To the extent permitted under section 1125(e) of the Bankruptcy Code, except as otherwise specifically provided in this **Amended** Plan, no Debtor, nor its officers, directors, managers, attorneys, professionals, and the Subchapter V Trustee (collectively, the "**Released Parties**") shall have or incur, and the Exculpated Parties are hereby released and exculpated from, any Exculpated Claim, or obligation, cause of action or liability for any Exculpated Claim, and shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities pursuant to this **Amended** Plan. The Exculpated Parties and their respective affiliates, agents, members, directors, officers, officials, employees, advisors and attorneys have, and upon the Effective Date shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this **Amended** Plan or distributions made pursuant to this **Amended** Plan. From and after the Effective Date ~~and upon the distributions contemplated in the Plan~~, a copy of the Confirmation Order and the **Amended** Plan shall constitute and may be submitted as a complete defense to any claim or liability satisfied, enjoined or subject to exculpation pursuant to **Article 12** of the **Amended** Plan; provided, however, that nothing in the **Amended** Plan shall, or shall be deemed to, release the Exculpated Parties with respect to, their obligations or covenants arising from bad faith, willful*

*misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Upon Confirmation of the* Amended *Plan, Creditors will be unable to pursue any Claims that are satisfied, enjoined or subject to exculpation under the* Amended *Plan, but Creditors may pursue Claims against the Debtors and their current officers, directors, members, managers, or employees that may arise in the future or pursuant to the* Amended *Plan which are not so enjoined. Any such liability against the Debtors professionals will not be limited to their respective clients contrary to the requirement of DR 6-102 of the Code of Professional Responsibility.*

### 12.02   Confirmation Injunction*.*

*Effective on the Effective Date, all persons who (a) have held, hold or may hold Claims against the Debtors, regardless of classification or treatment under this* Amended *Plan* arising before Confirmation *(on account of or related to such Claim(s)), or (b) have or may become liable for any Estate Causes of Action arising before or after the Petition Date (on account of or related to such liability), are, together with all successors, assignees and subrogees of the persons described in clauses (a) and (b), permanently and irrevocably enjoined from taking, causing, supporting or facilitating any of the following actions against or affecting the Debtors or assets of the Debtors, except as otherwise set forth in the* Amended *Plan:*

*(i)    Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtors seeking payment for (1) any Claim against the Debtors, or (2) any indemnification, contribution or other recovery sought on account of any Estate Causes of Action;*

*(ii)    Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors on account of or relating to (1) any Claim against the Debtors, or (2) any indemnification, contribution or other recovery sought on account of any Estate Causes of Action;*

*(iii)    Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the assets of the Debtors on account of or relating to (1) any Claim against the Debtors or (2) any indemnification, contribution or other recovery sought on account of any Estate Cause of Action; and*

*(iv)    Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of this* Amended *Plan. The injunction set forth above in* Article 12 *of the* Amended *Plan (the "*Injunction*") shall be fully enforceable and effective against all Persons described above, and shall be enforceable by all Persons who benefit from such injunction, including without limitation, the Debtors and their respective agents, principals, parents, affiliates and subsidiaries and each such benefitted Person shall have immediate, independent standing, without the need to notify, join or otherwise involve the Debtors or any other beneficiary of the Injunction,*

19

*to enforce such Injunction against all Persons subject to it. All Persons who benefit from the Injunction are recognized third party beneficiaries of __Article 12__ of the __Amended__ Plan. The Injunction shall be effective immediately upon the Effective Date, and shall be continuing, permanent and irrevocable as of such date (except to the extent the Confirmation Order is reversed or modified in relevant part on appeal), regardless of any default ~~(including any Event   of Default (defined below))~~ under the __Amended__ Plan, the lack or status of consummation of the __Amended__ Plan, the conversion of the Chapter 11 Cases to a case under any other chapter of the Bankruptcy Code, the dismissal of the Chapter 11 Cases, or any other reason. To the extent any section or other provision of this __Amended__ Plan is inconsistent with this __Article 12__ of the __Amended__ Plan, __Article 12__ of the __Amended__ Plan shall govern and control to the exclusion of such inconsistent section or other provision.*

**No provision in the __Amended__ Plan is intended to authorize any non-debtor third-party release.**

## ARTICLE 13
## CONFIRMATION OF THE __AMENDED__ PLAN

**13.01   Voting by Impaired Classes of Claims.**

The Holders of Claims in Class 2 and Class 3 are Impaired and entitled to vote to accept or reject the __Amended__ Plan, and the votes of such Holders will be solicited. A Class of Claims Impaired under the __Amended__ Plan shall have accepted the __Amended__ Plan if: (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3$^{rds}$ ) in amount of the Allowed Claims actually voting in such Class have voted to accept the __Amended__ Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under section 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the __Amended__ Plan.

**13.02   Acceptance by Impaired Classes of Claims.**

If the Holders of Claims in Class 2 and Class 3 vote to accept the __Amended__ Plan, the Debtors will seek confirmation of the __Amended__ Plan under sections 1191(a) and 1129(a) of the Bankruptcy Code

~~**13.03   Rejection by Impaired Classes of Claims**.~~

~~If the Holders of Claims in Class 2 and Class 3 do not vote to accept the Plan, the Debtors will seek confirmation of this Plan pursuant to section 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.~~

Dated: White Plains, New York

~~May 27~~July 3, 2025

Respectfully submitted,


/s/ ~~_____~~ *Patty Barajas* _____ _____
Patty Barajas, Plan Proponent


*/s/ Robert L. Rattet*_____
Robert L. Rattet, Attorney for Plan Proponent

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.9.1.1 Document comparison done on 7/3/2025 12:00:22 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Sub V Plan- DMMJ 5-27-25.docx | |
| **Modified filename:** Amended Plan  7-3-25.docx | |
| **Changes:** | |
| Add | 246 |
| Delete | 126 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 372 |